

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. W. Cox
State Health Officer
Austin, Texas

Dear Sir:

Opinion No. O-1151
Re: Interpretation of H.B. 903
relative to sterilization
of dishes, receptacles and
utensils.

We are in receipt of your request for an opinion
on the following questions pertaining to Article 700b, Penal
Code, Vernon's Annotated Criminal Statutes, i. e. Acts 1939,
46th Legislature, Regular Session, H. B. 903:

(1) Does House Bill 903 require the use by
eating establishments of any certain kind of
equipment for complying with the intention of
the law?

(2) Is the State Board of Health limited
under this law to the issuing of approval of any
steam or hot water sterilization to the exclu-
sion of all chemical means?

(3) How will this law affect dairies opera-
ting under a Standard Milk Ordinance adopted by
cities, in other words, does this law apply to
dairies and pasteurizing plants?

(4) Are there any sections or provisions in
House Bill 903 which are unconstitutional?

Section 2 of Article 700b, Penal Code, provides:

"No person, firm, corporation, or associa-
tion operating, managing, or conducting any hotel,
cafe, restaurant, dining car, drug store, soda
water fountain, meat market, bakery, or confec-
tionery, liquor dispensary or any other establish-
ment where food or drink of any kind is served or

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

permitted to be served to the public, shall furnish to any person any dish, receptacle, or utensil used in eating, drinking, or conveying food _if such dish, receptable, or utensil has not been washed after each service until clean to the sight and touch in warm water containing soap or alkali cleanser._ After cleaning, all glasses, dishes, silverware, and other receptacles and utensils _shall be placed in wire cages and immersed in a still bath of clear water heated to a minimum temperature of 170°F for at least three minutes, or two minutes at 180°F._ Upon removal from the hot water, all glasses, dishes, silverware, and other receptacles and utensils shall be stored in such a manner as not to become contaminated. _Provided that the State Board of Health may approve other equally effective methods of treatment by steam or hot water that meet with the minimum requirements for the safety of the public health, as prescribed by the State Board of Health, that are not inconsistent with this Act._ When paper receptacles, ice cream cones, or other single service utensils are used for serving food or drinks, they must be kept in a sanitary manner, protected from dust, flies, and other contamination.

"Provided that the provisions of this Section shall not apply to such establishments as described herein that use electrically operated dishwashing and glasswashing machines, that accomplish these purposes mechanically." (Underscoring ours).

The requirements of the above quoted section are clear and unambiguous.

Dishes, receptacles, and utensils, all defined in Section 1 (b), (e), and (c) of the Act, after each service, must be washed "in warm water containing soap or alkali cleanser" before they can lawfully be used again. This is a standard requirement of the Act.

The second requirement is that after cleaning the dishes, receiptacles, and utensils "be placed in wire cages and immersed in a still bath of clear water" of prescribed temperature. This is also a standard requirement.

There are two important provises in Section 2. In the first place, there is the authority vested in the State Board of Health to "approve ether equally effective methods of treatment <u>by steam or hot water</u>" (underscoring ours) as may be prescribed by the State Board of Health and that are not inconsistent with the Act. Secondly, establishments using electrically operated dishwashing and glasswashing machines are excepted from the requirements of the section.

The first question propounded is whether the Act requires the use by eating establishments of any certain kind of equipment for complying with the intention of the law.

Section 2 requires "wire cages" for immersion or rinsing purposes unless the State Board of Health approves ether equally effective methods of treatment by steam or hot water that meet with the minimum requirements for the safety of the public health.

There can be no question but that the law makes it mandatory to rinse dishes, receptacles, and utensils "after cleaning". If the State Board of Health approves a substitute method of dishwashing and rinsing by steam or hot water treatment to that set out in Section 2, as it is empowered to do, it has the responsibility of seeing that the purposes of the Act and the minimum requirements for the safety of the public health are not contravened.

The answer to your first question is that Article 700b of the Penal Code, Vernon's Ann. Criminal Statutes, does not require the use of any certain kind of equipment for complying with the paramount objective of the law, i. e. the sterilization of dishes, receptacles, utensils, with the exception of "wire cages" for immersing purposes where the method employed for sterilization is the standard method of washing and rinsing prescribed in Section 2 of the Act and where the State Board of Health has not sanctioned a different and equally effective method of treatment by steam or hot water for carrying out the intention of the Legislature as authorized in Section 2 of Article 700b.

The second question is whether or not the State Board of Health is limited under Article 700b to the issuing of approval of any steam or hot water sterilization to the exclusion of all chemical means.

We again quote the first proviso of Section 2:

"Provided that the State Board of Health may approve <u>other equally effective methods of treatment by steam or hot water</u> that meet with the minimum requirements for the safety of the public health, as prescribed by the State Board of Health, that are not inconsistent with this Act". (Underscoring ours).

The language is clear and explicit to the effect that if the Board of Health authorizes a substitute method for the standard method of washing in "warm water containing soap or alkali cleanser" and rinsing by immersion in water of a prescribed temperature, said substitute method of treatment must be "by steam or hot water".

To ascertain the true intent of the Legislature and to determine whether or not washing and sterilization of dishes, receptacles, and utensils by chemical means is excluded under Article 700b, we must look to the history of the sterilization of dishes Act.

The original law was H. B. No. 645, Reg. Ses., 45th Leg., Acts 1937, p. 667, ch. 333, Article 700a of the Penal Code, Vernon's Revised Criminal Statutes.

Section 2 reads as follows:

"No person, firm, corporation, or association operating, managing, or conducting any hotel, cafe, restaurant, dining car, drug store, soda water fountain, meat market, bakery, confectionery, or liquor dispensary, or any other establishment where food or drink of any kind is served, or permitted to be served to the public, shall furnish to any person any dish, receptacle, or utensil used in eating, drinking, or conveying food if such dish, receptacle, or utensil has not been (a) cleaned by washing in clean warm soap or alkaline solution until all visible grease and/or solid matter has been removed, and rinsed in clean water, and (b) sterilized by (1) heat, or (2) boiling in water for not less than two minutes, or (3) <u>soaking in a chlorine solution of a strength of not less than one hundred (100) parts per million for not less than five (5) minutes, subsequent to any use</u>." (Underscoring ours).

Section 2 was amended by Acts 1937, 45th Legislature, 2nd C. S., p. 1952, ch. 81, by the addition of the following proviso:

"Provided the provisions of this Section
shall not apply to such establishments, as de-
scribed herein, that use electrically operated
dishwashing, and glasswashing machines, that
accomplish these purposes mechanically."

It will be noted that in Section 2 of the now re-
pealed Article 700a there methods of sterilization were pro-
vided for: first, washing in soap or alkaline solution and
rinsing in clean water; second, sterilization by heat or
boiling water; third, "soaking in a chlorine solution of a
strength of not less than one hundred (100) parts per million
for not less than five (5) minutes, subsequent to any use."

Article 700a was repealed by Article 700b. Section
2 of Article 700b adopts the first method of Section 2 of
Article 700a, quoted above, as a standard, but authorizes the
Board of Health to approve the second method of Section 2 of
Article 700a as a substitute method. The new Act makes no
reference to the third method of Article 700(a), Section 2,
i. e. chlorine solution soaking.

There is no escape from the conclusion that the
Legislature excluded this method either by intention or by
oversight. The wisdom of a particular law is not for the
courts or the Attorney General's department to decide. It
was within the power of the Legislature to eliminate as a
method of sanitation the soaking of dishes in a chlorine so-
lution.

In answer to your question Number 2, therefore, it
is our opinion that under the express wording of Section 2 of
Article 700b the State Board of Health is limited to the is-
suing of approval to methods of treatment by steam or hot
water alone in lieu of the standard method of treatment set
out in said section.

In answer to your third question, it is our opinion
that dairies and pasteurizing plants fall within the defini-
tion of "factory" in Section 1 (f) of Article 700b which in-
cludes all places in which is carried on the business of manu-
facturing or preparing food for human consumption, and are
therefore subject to the terms, provisions, requirements, and
conditions of Article 700b.

Section 5 reads as follows:

"No persons, firm, corporation, or associa-
tion operating, managing, or conducting any food
factory or place where food is manufactured shall
use or keep for use any dish, utensil, ladle, or
other instrument, or any food grinding machine or
implement that has not been washed and sterilized,
as provided in the preceding Section of this Act
for dishes and other articles before each use, or
keep for use, or use any dish, utensil, or other
article for food that is cracked, broken, chipped,
or otherwise damaged in a manner to render proper
cleaning or sterilizing doubtful or impossible."

A full description of the word "dairy" is given in
the case of Associated Indemnity Corporation vs. Wilson (Tex.)
21 S. W. (2d) 314, 317, as follows:

"The word 'dairy' is defined in Webster's
New International Dictionary as follows:  The
place, room, or house where milk is kept and
'converted into butter or cheese; the depart-
ment of farming or of a farm that is concerned
with the production of milk, butter, and cheese!
And in the Century Dictionary and Cyclopędia
published in January, 1899, is defined as:
That branch of farming which is concerned with
the production of milk and its conversion into
butter and cheese; a house or room where cream
and milk are kept and made into butter and cheese;
a shop where butter, milk, etc., are sold."

A "dairy" or pasteurizing plant is plainly a "place
where food is manufactured" under Article 700b Section 5, er
a place "in which is carried on the business of manufacturing
or preparing food for consumption" under Article 700b (f).

It is not to be read into the statute that its
terms and provisions apply solely to places where the food
prepared or processed is to be consumed on the premises.  The
Act is a sanitary measure for the protection of the public
health, and is not aimed exclusively at the sterilization of
dishes in eating places where food is consumed on the pre-
mises.  Furthermore, the terms "utensils" and "receptacles"
as well as "dishes" suggest the broad and all-embracing
scope of the statute which has for its purpose public sani-
tation and should not be construed in a manner which would

defeat its salutary purposes and the obvious intention of the Legislature. There is absolutely no valid reason for making any exceptions under the Act.

As for your fourth question, we deem it inadvisable to answer it because of its general nature, but inform you that if there is any specific provision of the Act, the validity of which you have grounds for question, we would be glad to have same pointed out to us and a request made as to a ruling on its constitutionality.

Trusting that we have fully answered the first three inquiries of your request, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (s) DICK STOUT
Dick Stout
Assistant

DS:jm

Approved Oct 25 , 1939

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED:
OPINION COMMITTEE
By BWB, Chairman